UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
UNITED STATES OF AMERICA                        :
                                                                            :    07 Cr. 375 (SCR)
      -against-                               :
                                                                            :    **DECISION AND ORDER**
VICTOR TAVAREZ and CRESENCIA BAYRON,            :
:
                Defendants.                 :
------------------------------------------------------------X

**STEPHEN C. ROBINSON, United States District Judge:**

      Defendants Victor Tavarez ("Tavarez") and Cresencia Bayron ("Bayron"; collectively the "Defendants") are charged with a conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B), and 846. Bayron filed various pre-trial motions for suppression of evidence and discovery, and requested an evidentiary hearing to address certain of these issues. For the reasons discussed below, Bayron's motions are DENIED.

**I.    Requests for discovery**

    **A.    Rule 16 "recorded statements"**

      Pursuant to Fed. R. Crim. P. 16(a)(1)(B), Bayron requests that the Government provide the date, time, place, and circumstances of an oral statement that the Complaint alleges Bayron made in the presence of a confidential source ("the CS") in December 2006, as well as any written summaries of that statement made by the confidential source or by law enforcement personnel. Bayron contends that because this oral statement "was likely memorialized in writing in a report" by either a DEA agent or the CS, it therefore constitutes a "recorded statement" within the meaning of Fed. R. Crim. P. 16(a)(1)(B). In addition, Bayron requests records of any

statements attributed to Bayron that may have been recounted to the Government during a proffer session.

Rule 16(a)(1)(B)(ii) clearly requires the Government to produce the portion of any written record of an oral statement by a defendant "if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent." This provision, however, does not encompass the statement at issue here, as Bayron does not claim that her statement was made to an individual she knew to be a government agent. The Second Circuit has held that oral statements by a defendant to persons other than known government agents, even if they are documented in a written record, need not be produced as part of Rule 16 discovery. See In re United States, 834 F.2d 283, 284-86 (2d Cir. 1987). Accordingly, Bayron's request for production of any written record of her December 2006 statement that was recounted by the CS is hereby DENIED.

To the extent that Bayron is requesting statements made by prospective Government trial witnesses, the text of 18 U.S.C. § 3500 et seq. makes clear that the Government is under no obligation to produce Jencks Act material until after a witness has testified on direct examination at trial. Indeed, district courts lack the authority to compel early disclosure of Jencks Act material. See In re United States, 834 F.2d at 287. Similarly, it is well established that the Government need only produce evidence that may be used to impeach the credibility of any of the Government's witnesses pursuant to Giglio v. United States, 450 U.S. 150, 154 (1972) "in time for effective use at trial." See, e.g., United States v. Perez, 940 F. Supp. 540, 553 (S.D.N.Y. 1996). Here, the Government, in good faith, has represented that it intends to produce Giglio and Jencks Act material the day before the corresponding witness will testify, or, if additional time is reasonably required to review such material, sufficiently in advance of the witness's

testimony so as to avoid any delay at trial. At the time of those disclosures, to the extent that Bayron or Tavarez feels that additional time is necessary given the volume or complexity of the materials provided, the Court will consider applications to continue or recall witnesses. It is unnecessary, however, to order early disclosure at this time. Thus, to the extent that Bayron's motion seeks early production of Jencks Act or Giglio material, that motion is DENIED.

### B.     Early production of Rule 404(b) material

Bayron requests disclosure of evidence the Government will seek to admit under Federal Rule of Evidence 404(b). Rule 404(b) itself only requires that the Government provide "reasonable notice in advance of trial" for the admission of prior convictions and bad acts as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The rule establishes no minimum time, however, because "the evidence the government wishes to offer may well change as the proof and possible defenses crystallize." United States v. Matos-Peralta, 691 F. Supp. 780, 791 (S.D.N.Y. 1988). The Government acknowledged its obligations under Rule 404(b), and indicated that it intends to provide notice of any 404(b) evidence it might seek to introduce at least 10 working days before the beginning of trial. The Second Circuit has held that disclosure with even less advance notice than this can still be reasonable under Rule 404(b). See, e.g., United States v. Valenti, 60 F.3d 941, 945 (2d Cir. 1995). There is therefore no need to issue the order Bayron seeks. See United States v. Ramirez, No. 91 Cr. 493 (KMW), 1991 U.S. Dist. LEXIS 12183, *4 (S.D.N.Y. Aug. 30, 1991) ("the Government has represented that it will provide timely notice of any intent to introduce [404(b)] evidence so that there is no need to issue the order defendant seeks"). Bayron's motion for early disclosure of Rule 404(b) material is therefore DENIED.

### C. Informant-related information

Bayron seeks a ruling requiring the Government to disclose information about the CS: (1) for the purposes of testimony at a requested suppression hearing; or, alternatively, (2) so that she may investigate and interview the CS as part of trial preparation. Based on the complaint and indictment in this matter, Bayron believes "that the information attributed to the confidential source may well have been relied on as a basis for arresting Bayron."

In general, the Government may withhold from disclosure the identity of individuals who inform law enforcement officers of violations of the law. See, e.g., Roviaro v. United States, 353 U.S. 53, 59 (1957); United States v. Jackson, 345 F.3d 59, 69 (2d Cir. 2003). Where the disclosure of an informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," Jackson, 345 F.3d at 69, the Government's privilege gives way to the defendant's rights. See Roviaro, 353 U.S. at 60-61. This Court is required to balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62.

A defendant bears the burden of demonstrating the need for disclosure of an informant's identity, and must show that without such disclosure, he or she will be deprived of the right to a fair trial. See, e.g., United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997). Disclosure of a confidential informant's identity is an "extraordinary remedy," see United States v. Muyet, 945 F. Supp. 586, 602 (S.D.N.Y. 1996), and "disclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988). A defendant must do more than simply allege that the informant was a participant in or witness to the crime charged, or that the informant might cast doubt on the general credibility of a government witness. Id. The

Second Circuit has stated that "speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden." Fields, 113 F.3d at 324.

A defendant's need for disclosure of an informant's identity has been found less compelling for purposes of a pretrial suppression hearing than for purposes of trial, as the issues in suppression hearings typically do not specifically bear on the guilt of the defendant. See, e.g., Fields, 113 F.3d at 324; McCray v. Illinois, 386 U.S. 300, 311-12 (1967). Moreover, the Second Circuit has held that disclosure of an informant's identity for a suppression hearing is appropriate only where "the information supplied by such persons constitutes the 'essence,' 'core' or 'main bulk' of the probable cause upon which the authorities have relied, and where the critical information ascribed to these individuals is not in any significant manner corroborated by independent evidence." United States v. Manley, 632 F.2d 978 (2d Cir. 1980).

Bayron has not demonstrated sufficient need to warrant disclosure of the identity of the CS either for purposes of the suppression hearing or for trial. As to the hearing, Bayron claims disclosure is warranted only because "information attributed to the confidential source may well have been relied on as a basis for arresting Bayron." Bayron Mem. of L. at 5. This statement constitutes a level of speculation that, absent more, does not warrant disclosure. Further, the Complaint contains additional items of corroborating evidence – discussed in greater detail below – that contributed to the probable cause determination.

With respect to the trial, Bayron has argued that disclosure is necessary because the CS arranged the drug transaction that led to Bayron's arrest, and because the Complaint relies on statement made to the CS by Bayron regarding Bayron's involvement in the charged crimes. In essence, however, these claims amount to an allegation that the CS was a participant in or witness to the crime charged, which is not sufficient to warrant disclosure of the CS's identity.

5

Moreover, the Government has represented that it intends to call the CS as a witness at trial. The Government, therefore, will be required to disclose Jencks Act and Giglio material before the CS testifies, and Bayron will be provided with the identity of the CS at that time; this procedure is sufficient to guarantee Bayron's ability to conduct a meaningful defense with respect to the CS. See Muyet, 945 F. Supp. at 602 n.16. Accordingly, Bayron's motion for disclosure of information regarding the CS is DENIED.

### D.   Reciprocal discovery for the Government

The Government has requested that this Court issue an order directing Defendants to provide certain items of reciprocal discovery pursuant to Rule 16(b). Though Defendants have not made any specific statements indicating their awareness of their reciprocal Rule 16(b) obligations, it is the experience of this Court that Defendants' attorneys are acquainted with their Rule 16 duties. Accordingly, the Government's request for an order directing Defendants to comply with their Rule 16 discovery obligations is DENIED at this time. Similarly, it is this Court's experience that Defendants' attorneys are also acquainted with their obligations under Rules 12.2 and 12.3; thus, the Government's request for an order directing the Defendants to provide the mandated notices specified in those rules is also DENIED.

Finally, Pursuant to Rule 26.2, the Government requests the Defendants be ordered to disclose prior statements of the witnesses they will call to testify, on the same basis upon which the Government will supply the Defendants with material relating to Government witnesses under 18 U.S.C. § 3500; this motion is GRANTED.

## II. Motions relating to the February 3, 2007 arrest of Bayron, her post-arrest statement, and any physical evidence seized incident to that arrest

Bayron requests an evidentiary hearing to determine whether there was probable cause for her arrest on February 3, 2007, and seeks to suppress a post-arrest statement attributed to her as well as any physical evidence seized from her person or automobile on that date. The Government argues that a hearing is not necessary because the material facts surrounding the arrest establish that there was probable cause for the arrest, and those facts are not in dispute.

### A. Facts

The facts surrounding the events of February 3, 2007 are set forth in the Complaint, a document which was sworn to by Cornelius J. Westbrook, a detective with the Westchester County Police Department assigned to the Westchester Drug Enforcement Administration ("DEA") Task Force, and signed by Magistrate Judge Mark D. Fox on February 5, 2007.

According to the Complaint, in or about December 2006, the CS told a DEA agent that Tavarez told the CS that he had sent Bayron to Atlanta, Georgia to purchase drugs. Later that month, DEA agents stopped Bayron getting off a bus; she indicated that she was returning from Atlanta, but she did not have any drugs on her person or in her luggage. Subsequently in December 2006, Tavarez and Bayron met with the CS; the CS reported that Bayron said that she had been nervous when the agents stopped her as she was getting off the bus, and that she was lucky she had not been able to get drugs in Atlanta.

On or about February 2, 2007, the CS arranged to purchase two kilograms of cocaine from Tavarez the following day in Yonkers, New York. Law enforcement agents set up surveillance of the meeting location in Yonkers, and a man and woman later identified as Tavarez and Bayron arrived in the vicinity in a livery cab. Bayron was driving the vehicle, and Tavarez was riding in the front passenger seat. Tavarez exited the cab carrying a white plastic

7

bag and met with the CS; the meeting was recorded.  Tavarez told the CS that he had brought only one kilogram of cocaine and then entered a building with the CS.  After Tavarez left the building, a DEA agent and a task force officer entered the building and recovered from the CS a white plastic bag containing approximately one kilogram of a substance that field tested positive for the presence of cocaine.  Tavarez and Bayron were then arrested in the vicinity of the meet location.

> B. **Discussion**
>> i. **Evidentiary hearing**

A defendant is not entitled to an evidentiary hearing unless he or she can show that there is a contested issue of material fact with respect to the issue for which the hearing is requested.  See United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992).  A defendant's moving papers must be "sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question."  Id.  To create a factual dispute, a defendant must submit a sworn affidavit from one with personal knowledge of the underlying facts.  In the absence of such an affidavit, or when the allegations contained in such an affidavit are general and conclusory, an evidentiary hearing is unnecessary.  See United States v. Shamsideen, No. 03 Cr. 1313 (SCR), 2004 U.S. Dist. LEXIS 9560, *31 (S.D.N.Y. Mar. 31, 2004).

Bayron's declaration in support of her motion to suppress does not place any of the above-described facts in dispute.  Instead, the declaration simply states that Bayron is a licensed cab driver, that she dropped off a passenger in Yonkers on February 3, 2007, and that she was arrested shortly thereafter by police in civilian clothes and unmarked cars.  This declaration does not establish an issue of material fact that warrants an evidentiary hearing on this matter.

Nothing submitted by Bayron contradicts the assertions in the Complaint concerning the CS's discussions with Tavarez and Bayron, or the observations made by law enforcement officers on February 3, 2007 when Tavarez and Bayron arrived at the meet location in Yonkers. Bayron makes various arguments as to why her arrest was not supported by probable cause, but these arguments can and will be addressed by this Court as part of Bayron's motion to suppress. Accordingly, Bayron's request for an evidentiary hearing regarding the events of February 3, 2007 is DENIED.

        ii.        **Bayron's arrest**

Bayron maintains that law enforcement officers did not have probable cause to arrest her on February 3, 2007, and contends that any post-arrest statements made by Bayron, or any evidence seized from Bayron's person or automobile incident to such arrest, must therefore be suppressed.

The Second Circuit has held that law enforcement officials have probable cause to arrest absent a warrant "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Boyd v. City of New York, 336 F.3d 72, 75-76 (2d Cir. 2003). "Probable cause does not require absolute certainty." Id. at 76.

Based on the facts set forth in the Complaint, this Court finds that the DEA agents and task force officers had probable cause to arrest Bayron on February 3, 2007. At the time of Bayron's arrest, it is certain that law enforcement officials knew that after being told by the CS that Bayron was sent to Atlanta by Tavarez to purchase drugs, Bayron was stopped as she was returning from Atlanta. In addition, agents knew that the CS had arranged a substantial drug transaction with Tavarez for February 3, 2007 in Yonkers, and were able to observe Bayron

transporting Tavarez to this transaction, with Tavarez in the front passenger seat of Bayron's taxi. When combined with other information from the CS linking Bayron and Tavarez, the fact that Tavarez was seated in the front seat of the taxi contributed to the agents' conclusion that Tavarez was not an ordinary passenger in the vehicle.

Bayron argues that the Complaint is not clear as to whether the CS had already told agents about Bayron's December 2006 statements that she had been nervous when she was stopped upon her return from Atlanta, and that she was fortunate that she had been unable to purchase drugs there. It is clear from the facts and the timeline set forth in the Complaint, however, that the CS provided information to agents in December 2006 – information that led to the stop and search of Bayron upon her return from Atlanta – and also was in contact with agents in early February 2007 to setup the transaction that ultimately led to the arrests of Tavarez and Bayron. We therefore find it reasonable to assume that the CS had in fact communicated with agents sometime prior to February 3, 2007 regarding Bayron's statements in the aftermath of her December 2006 encounter with law enforcement officials.

Taken as a whole, it is this Court's view that law enforcement officials had sufficient information to determine that there was probable cause to arrest Bayron following the narcotics transaction between Tavarez and the CS on February 3, 2007.

### iii.     Bayron's post-arrest statement

Bayron's only argument in support of her motion to suppress her post-arrest statement is that the statement was obtained subsequent to an arrest that was made without probable cause. Given that this Court has determined that there was probable cause to arrest Bayron, her motion to suppress her post-arrest statement is DENIED.

      **iv.**    **Search of Bayron's person and vehicle**

Law enforcement officials typically must obtain a search warrant based on probable cause before conducting any type of search.  One traditional exception to the warrant requirement, however, is a search conducted pursuant to a lawful arrest; a search incident to a lawful arrest may include both a search of the person arrested and a search of the area within the control of that person.  See United States v. Robinson, 414 U.S. 218, 224 (1973).  Further, the Supreme Court has long maintained that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."  New York v. Belton, 453 U.S. 454, 460 (1981).  Further, in such situations, "the police may also examine the contents of any containers found within the passenger compartment…whether [the container] is open or closed."  Id. at 460-61.

As described in section II(B)(ii) above, law enforcement officials had probable cause to arrest Bayron on February 3, 2007.  Consequently, pursuant to Robinson and Belton, the officers were entitled to search Bayron's person and the passenger compartment of her vehicle at that time, incident to her lawful arrest.  Bayron's motion to suppress the searches of her person and vehicle is therefore DENIED.

**III.**    **Conclusion**

For the reasons stated above:

    1. Bayron's request for production of any written record of her December 2006 statement that was recounted by the CS is DENIED.  Further, to the extent that Bayron's motion seeks early production of Jencks Act or Giglio material, that motion is DENIED.

    2. Bayron's motion for early disclosure of Rule 404(b) material is DENIED.

    3. Bayron's motion for disclosure of information regarding the confidential informant is DENIED.

4. Government's request for an order directing the Defendants to comply with their Rule 16 discovery obligations is DENIED. Government's request for an order directing the Defendants to provide the notices mandated by Rules 12.2 and 12.3 is DENIED. Government's motion for an order pursuant to Rule 26.2 is GRANTED.

5. Bayron's request for an evidentiary hearing regarding the events of February 3, 2007 is DENIED.

6. Given that this Court has determined that there was probable cause to arrest Bayron, her motion to suppress her post-arrest statement is DENIED.

7. Similarly, Bayron's motion to suppress the searches of her person and vehicle is also DENIED.

The Clerk of the Court is directed to terminate docket number 15.

*It is so ordered.*

Dated: October 10, 2007

White Plains, New York

Stephen C. Robinson
United States District Judge